IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| T.S., *et al.*, | * | |
| | * | |
| Plaintiffs | * | |
| | * | Civ. No. MJM-23-2426 |
| v. | * | |
| | * | |
| EVERNORTH BEHAVIORAL | * | |
| HEALTH, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiffs T.S. and J.S. filed (collectively, "Plaintiffs") this civil action under 29 U.S.C. § 1132(a)(1)(B) against Evernorth Behavioral Health, Inc., Cigna Behavioral Health, Inc., Evolution Healthcare, Luminare Health Benefits, Inc. ("Luminare"), and The Paul Reed Smith Guitars Qualified High Deductible Health Plan alleging the wrongful denial of benefits. This matter is before the Court on Luminare's Motion to Dismiss. ECF No. 63. The Motion is fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motion and dismiss Plaintiffs' claims against Luminare.

I.  BACKGROUND

   A.  Factual Background

The following facts are drawn from Plaintiffs' Amended Complaint (ECF No. 55).

T.S. is a participant in the Paul Reed Smith Guitars Qualified High Deductible Health Plan (the "Plan"), and J.S. is a beneficiary. Am. Compl. ¶¶ 7, 8. T.S. is J.S.'s father. *Id.* ¶ 2. The Plan is

a self-funded employee welfare benefits plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* ¶ 6. Cigna Behavioral Health, Inc. ("Cigna") is an insurance company that was the third-party claims administrator, as well as the fiduciary under ERISA, for the Plan. *Id.* ¶ 3. Evernorth Behavioral Health, Inc. ("Evernorth") is a subsidiary of Cigna that also administered some claims for mental health benefits under the Plan. *Id.* ¶ 4. Evernorth and Luminare "were designated third party administrators of the Plan for Plaintiffs' claim for coverage of transitional living services offered by Innercept, LLC ('Innercept')." *Id.* ¶ 5.

During his early childhood, J.S. displayed difficulty socializing but met all developmental milestones and did well academically and artistically. *Id.* ¶ 18. When he was eight years old, J.S. was diagnosed with Asperger's Syndrome, a condition now folded into autism spectrum disorder. *Id.* ¶ 19. In middle school, J.S. began to struggle with social anxiety, *id.* ¶ 20, and began displaying symptoms of mania, psychosis, and paranoia, *id.* ¶ 21. He continued to decline throughout high school, expressing severe anxiety, paranoia, and began expressing belief in conspiracy theories. *Id.* ¶ 23. During this time, according to his parents, he:

> became increasingly scattered and disorganized, and this psychosis escalated to delusions and hallucinations. He also began to exhibit delusions of grandeur, and withdrawal from family and friends. [J.S.] underwent another neuropsychological evaluation in April 2018, with Laura Ambrose, PhD, NCSP, and David Black, PhD. [J.S.] continued to demonstrate a severe drop in his ability to engage in any school work, a lack of interest in anything but The Bible, was experiencing and sharing delusional thoughts, exhibiting a lack of personal hygiene, fasting with enthusiasm, and departing our house repeatedly, unsupervised, for unsafe walks throughout the city of Washington, DC for hours at a time—one time without any shoes or socks for three hours and retorting that Jesus had walked this way when it was noticed on his return.

*Id.* ¶ 24. J.S. was hospitalized from May 15, 2018, to June 18, 2018, to address his mental health problems. *Id.* ¶ 25. After his release, J.S. attempted suicide and was hospitalized again in

November 2018. *Id.* ¶ 26. He was again hospitalized the following month for continued suicidal ideation. *Id.* ¶ 27. During this time, J.S. suffered from delusions. *Id.* ¶ 28. He was treated by the "First Episode Psychosis Program" in January 2019. *Id.* ¶ 29. Despite making "bursts of improvement" while being treated in the psychosis program, J.S. continued to hallucinate and experience manic tendencies and psychosis. *Id.* ¶ 30. In January 2020, J.S. was diagnosed with catatonia. *Id.* ¶ 33. He began to recover from his catatonia by February 2020, but then progressively slipped into a more pronounced psychosis. *Id.* ¶ 34. J.S.'s parents noted that by June 2020, his condition continued to deteriorate, with his cognitive skills becoming increasingly impaired. *Id.* ¶ 35.

J.S. was admitted to Innercept on June 29, 2020. *Id.* ¶ 36. Due to the severity of his prior symptoms and lack of responsiveness to previous interventions, his treating professionals agreed that he would need extended mental health treatment to help him reach a consistently safe mental health space. *Id.* ¶ 37. Through a series of Explanation of Benefits statements ("EOBs"), Cigna began refusing to cover J.S.'s claims by August 1, 2020. *Id.* ¶ 38. Plaintiffs appealed those denials. *Id.* ¶ 39. On April 27, 2022, Cigna (through its subsidiary, Evernorth) sent a denial letter denying coverage for the treatment J.S. was receiving at Innercept. *Id.* ¶ 40. The letter indicated that J.S.'s claims were denied from September 8, 2020, through September 8, 2022. The following explanation was provided:

> Based upon the available information, received initially and with this appeal, [J.S.'s] symptoms do not meet the Cigna Behavioral Medical Necessity Criteria for Residential Mental Health Treatment for Adults for continued stay from 09/08/2020 – 09/08/2022 as the treatment provided had led to sufficient improvement in the moderate-to-severe symptoms and/or behaviors that led to this admission so that [J.S] could be safely and effectively treated at a less restrictive level of care. [J.S.] had not developed new symptoms and/or behaviors that required this intensity of service for safe and

> effective treatment. Less restrictive levels of care were available for safe and effective treatment.

*Id.* ¶ 41. The letter indicated that the denial was based on "Cigna Medical Necessity Criteria for Treatment of Behavioral Health and Substance Use Disorders." *Id.* ¶ 42. Cigna, through Evernorth, sent another denial letter on June 16, 2022, addressing J.S.'s treatment from August 1, 2020, through September 2, 2020. The letter provided the following explanation for the denial:

> Based upon the available clinical information received initially and with this appeal, [J.S's] symptoms did not meet Medical Necessity Criteria for continued stay at Residential Mental Health Treatment for Adults from 08/01/2020 to 09/02/2020 as [J.S.] had not recently demonstrated actions or made serious threats of harm to [himself] or others as a result of a mental health disorder that were of such severity that [J.S.] required the intensity of treatment intervention and 24 hour monitoring of a Residential Mental Health Treatment program for your safe and effective treatment. Less restrictive levels of care were available for safe and effective treatment.

*Id.* ¶¶ 43, 44.

Plaintiffs appealed the denials but do not have a record indicating that Cigna responded. *Id.* ¶ 45. Plaintiffs asked for the denial of payment for J.S.'s residential treatment to be reviewed by an appropriately qualified external review agency in a request dated August 23, 2022. *Id.* ¶ 46. Plaintiffs recounted J.S.'s history and included letters of medical necessity from his treatment providers, which stated, among other things, that his "severe psychotic symptoms" made residential care "a medical necessity for his safe treatment." *Id.* ¶ 47. Plaintiffs included copies of J.S.'s medical records with the appeal and argued that he continued to meet the relevant continued stay criteria. *Id.* ¶ 48. The medical records reflected problematic behaviors. For example, on August 5, 2021, J.S. was having a hard time putting sentences together or concentrating shortly after he jumped off a balcony as "penance" when an auditory hallucination told him to do so. *Id.* ¶ 49. On November 29, 2021, J.S. reported homicidal ideation towards his younger brother,

4

intrusive thoughts, delusions, and episodes of catatonic stillness where he would be unable to move or talk for long periods, despite remaining conscious. *Id.* ¶ 50. Plaintiffs stated that J.S. had complex mental health issues, but his treatment team at Innercept helped him make meaningful progress. *Id.* ¶ 51. Plaintiffs continued, writing that they would not have admitted J.S. to Innercept and taken on the significant financial and emotional obligations that came with it if they had another option. *Id.*

> In a March 21, 2023, decision, the external reviewer upheld the denial, stating:
>
>> After review of the medical documentation provided, the member stay at Residential Treatment is not deemed medically necessary. The patient was making adequate gains, however prolong stay, [sic] can cause a waxing and waning effect during course which can impede the therapeutic goals. This can be evidenced by isolated outbursts the patient experienced such as putting a hole in the wall on 02/21/2021. Overall the patient is not suicidal or homicidal. He is not physically aggressive to peers. He is not manic. He is able to complete his ADL's, medication compliant [sic] and attends/engage with group sessions. He has a good support system in his parents. He was able to utilize his overnight passes with no difficulty.

*Id.* ¶ 52 (alteration in Am. Compl.). On May 21, 2022, J.S. stepped down into Innercept's transitional living level of care. *Id.* ¶ 53. In an EOB statement, Evolution Healthcare denied payment for his transitional care, stating that the diagnosis and/or service code reported were not covered and the patient was responsible for the billed charges. *Id.* ¶ 54.

On February 22, 2023, J.S.'s mother ("Amy") submitted an appeal of the denial of payment for J.S.'s transitional living care at Innercept to Evolution Healthcare and Cigna. *Id.* ¶ 55. Amy stated that the transitional care was a covered expense, quoting language defining covered expenses from her benefits booklet: "Medically necessary services, supplies or treatments that are recommended or provided by a physician, professional provider or covered facility for the treatment of an illness or injury and that are not specifically excluded from coverage herein.

5

Covered expenses shall include specified preventive care services." *Id.* ¶ 56. She then quoted the definition of "facility" from her benefits booklet: "A healthcare institution which meets all applicable state or local licensure requirements." *Id.* ¶ 57. Amy contended that Innercept was licensed, accredited, and compliant with all governing state regulations, and according to the relevant language from the Plan, should have been approved. *Id.* ¶ 58. Amy was unable to find any exclusions listed in her benefits booklet that would disallow J.S.'s treatment. *Id.* In a letter dated September 14, 2023, Evolution Heath upheld the denial of payment for J.S.'s treatment. *Id.* ¶ 59 (The letter stated that the decision was partially upheld but did not specify which portions of the decision had been overturned and listed the approved amount as $0.00.).

On March 22, 2024, Amy submitted another appeal for J.S.'s transitional living treatment at Innercept, pointing out that Evolution Health had changed its justification for denying payment to a custodial care exclusion denial and then claimed that it had issued the final determination. *Id.* ¶ 60. Amy accused Evolution Health of treating its initial denial as a "trial run" and then of shifting its denial rationale once she was no longer able to respond. *Id.* ¶ 61. She continued alleging that J.S.'s treatment was a covered benefit under the Plan. *Id.* ¶ 62. She argued that J.S.'s treatment did not qualify as custodial care under that definition in her benefits booklet, as J.S. continued to receive medically necessary therapeutic treatment. *Id.* ¶ 63. Amy also attached a letter from the Clinical Director of the Young Adult campus at Innercept, asserting that none of the care provided to J.S. was custodial under the Plan definition. *Id.* ¶ 64.

In a letter dated April 10, 2024, Amy was informed that the internal appeals process had been exhausted by a purported third-party administrator of the Plan, Luminare, and she was not eligible for an external review as the denial was based on a custodial care plan language exclusion and not medical necessity, experimental/investigational treatment or a recission of coverage. *Id.* ¶

67. Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA. *Id.* ¶ 68.

### B. Procedural Background

On April 27, 2023, Plaintiffs filed their initial Complaint in the United States District Court for the District of Utah. ECF No. 1. The Complaint alleged that Evernorth, Cigna, and the Plan wrongfully denied Plaintiffs' benefits claims under ERISA. *Id.* On August 18, 2023, Cigna and Evernorth filed a motion to change venue. ECF No. 12. On September 1, 2023, the parties submitted a stipulated motion to change venue to this District, stating that the Plan was administered in Maryland. ECF No. 13. The stipulated motion was granted on September 5, 2023, transferring the case to this District. ECF No. 14.

On July 10, 2024, Plaintiffs filed an Amended Complaint, adding Luminare as a defendant. Am. Compl. On July 17, 2024, the Plan, Cigna, and Evernorth filed Answers to the Amended Complaint. ECF Nos. 57 & 58. On August 9, 2024, Luminare filed a Motion to Dismiss for failure to state a claim. ECF No. 63. Plaintiffs filed a response in opposition, ECF No. 88, and Luminare replied, ECF No. 95.

Plaintiffs allege that the denial of benefits for J.S.'s medical treatment was a breach of contract and caused T.S. to incur medical expenses that should have been paid by the Plan in an amount exceeding $400,000. Am. Compl. ¶ 69. Plaintiffs allege that Luminare, as a fiduciary of the Plan under ERISA, failed to provide coverage under the express terms of the Plan, and that the denial letter issued by Luminare failed to respond substantively to the issues presented in Plaintiffs' appeals. *Id.* ¶¶ 72–75. They further allege that all defendants breached their fiduciary duties when they failed to comply with their obligations under ERISA to act solely in J.S.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries. *Id.* ¶

76. Plaintiffs seek judgment in the total amount owed for J.S.'s treatment, plus pre- and post-judgment interest, and attorney's fees. *Id.* at 14.

## II.  STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations

sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

### III. DISCUSSION

Luminare moves for dismissal of the claims asserted against it in this action, arguing that it is not a proper defendant because it is not the Plan, the Plan administrator, or otherwise responsible for benefits under the Plan. ECF Nos. 63-1, 95. Plaintiffs oppose the motion, arguing that Luminare may be sued as a third-party administrator and fiduciary. ECF No. 88. As explained below, the Court finds that Plaintiffs do not allege sufficient facts to state plausible claims against Luminare for denial of benefits and will therefore grant the motion.

ERISA, as amended, 29 U.S.C. § 1001 *et seq.*, is a comprehensive statute regulating employee benefit plans and is "designed to promote the interests of employees and their beneficiaries" in their benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). ERISA

9

§ 502(a), codified at 29 U.S.C. § 1132(a), provides that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (cleaned up).

> To establish a claim of wrongful denial of benefits [under 29 U.S.C. § 1132(a)(1)(B)], a plaintiff must show one of two things. *See Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 340–41 (4th Cir. 2000). "'If the plan [does] not give the employer or administrator discretionary or final authority to construe uncertain terms,'" a plaintiff must show that he is entitled to benefits based on "'the terms of the plan and other manifestations of the parties' intent.'" *Id.* (alteration in *Booth*) (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 112–13 (1989)). Alternatively, "'[w]here discretion is conferred upon the trustee with respect to the exercise of a power,'" a plaintiff must prove that there was 'an abuse by the trustee of his discretion.'" *Booth*, 201 F.3d at 341 (quoting *Firestone*, 289 U.S. at 111).

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, Civ. No. ELH-17-2729, 2018 WL 4052182, at *6 (D. Md. Aug. 23, 2018). Judges in this District have held that "the proper party defendant [in an action to recover benefits] is the entity which holds the discretionary decision-making authority over the denial of ERISA benefits." *Lewis v. Aetna Life Ins. Co.*, Civ. No. CCB-19-860, 2020 WL 247461, at *2 (D. Md. Jan. 15, 2020) (quoting *Ankney v. Metropolitan Life Ins.*, 438 F. Supp. 2d 566, 574 (D. Md. 2006), and citing *Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d 461, 471–72 (D. Md. 2005), *aff'd* 205 F. App'x 183 (4th Cir. 2006), and *Trotter v. Kennedy Krieger Inst., Inc.*, Civ. No. JKB-11-3422, 2012 WL 3638778, at *3 (D. Md. Aug. 22, 2012)), *cited in Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, Civ. No. DKC-21-1818, 2022 WL 4368152, at *5 (D. Md. Sept. 21, 2022). Such claims may be brought against the benefits plan itself. *Lewis*, 2020 WL 247461, at *3 (citing *Wingler v. Fidelity Investments*, Civ. No. WDQ-12-3439, 2013 WL 6326585, at *3 & n.4 (D. Md. Dec. 2, 2013), and *Abbott v. Duke Energy Health*

*& Welfare Ben. Plan*, No. 3:07-CV-00110, 2007 WL 2300797, at *2 (W.D.N.C. Aug. 7, 2007)). Additionally, courts in this Circuit have stated that "an ERISA action for denial of benefits under a *pension plan*" may be brought under 29 U.S.C. § 1132(a)(1)(B) "against the pension plan itself as an entity and any fiduciaries who control the administration of the pension plan." *Id.* at *3 n.5 (quoting *McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004) (emphasis added), quoted in *Nordman*, 2022 WL 4368152, at *5).

Under ERISA, a plan "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting the management of [an ERISA] plan or exercises any authority or control respecting the management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006). Under ERISA, "a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets." *Moore*, 458 F.3d at 438 (citation omitted); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir. 1992) (defining "fiduciary"), as amended (July 17, 1992). "Under ERISA a person is a fiduciary only with respect to those aspects of the plan over which he or she exercises authority or control." *Moore*, 458 F.3d at 438; *see also Coleman*, 969 F.2d at 61 ("[A] party is a fiduciary only as to the activities which bring the person within the definition.").

Here, Plaintiffs allege that Luminare is a third-party administrator of the Plan for Plaintiffs' claim for coverage of transitional living services provided by Innercept. *Id.* ¶¶ 5, 67. Plaintiffs further allege that Luminare responded to Plaintiffs' second level one appeal and that Luminare exhausted the internal appeals process. *Id.* The claim was ineligible for external review because

the denial was "based on a custodial care plan language exclusion and not medical necessity, experimental/investigational treatment or a recission of coverage." *Id.* ¶ 67. Plaintiffs contend that Luminare failed to provide coverage for J.S.'s treatment in violation of the express terms of the Plan, *id.* ¶ 72, and that Luminare, as a third-party administrator, failed to substantively respond to the issues presented in T.S.'s appeals and did not meaningfully address the arguments or concerns Plaintiffs raised during the appeals process, *id.* ¶¶ 72–74. Lastly, Plaintiffs allege that Luminare's failure to provide coverage for J.S.'s medically necessary treatment violates terms of the Plan. *Id.* ¶ 77.

Here, Plaintiffs do not allege or provide factual support for any contention that Luminare had discretionary decision-making authority over the denial of benefits. *Lewis*, 2020 WL 247461, at *2. Plaintiffs allege that Luminare responded to their second level one appeal but do not allege that Luminare made the decision regarding the appeal. *See* Am. Compl. ¶¶ 5, 67. Plaintiffs allege in a conclusory fashion that Luminare failed to provide coverage, *id.* ¶ 72, but provide no facts showing that Luminare had any discretionary authority to make the coverage decision.

Plaintiffs similarly fail to allege that Defendant is a fiduciary under the Plan. Plaintiffs are correct that a third-party administrator may be a fiduciary under ERISA, *see Briscoe v. Fine*, 444 F.3d 478, 488–95 (6th Cir. 2006) (citing cases), but to support a reasonable inference that Luminare is a fiduciary, Plaintiffs must allege that it exercised some discretionary authority or control in the administration or management of the Plan. *See* 29 U.S.C. § 1002(21)(A). Here, Plaintiffs do not allege any such facts.

Accordingly, the Court finds the Amended Complaint inadequate to state a plausible claim against Luminare for the wrongful denial of benefits under ERISA § 502(a). The claim against Luminare shall be dismissed without prejudice.

## IV.     CONCLUSION

For the foregoing reasons, Luminare's Motion to Dismiss will be GRANTED.

A separate Order will follow.

  1/28/25                                                     /S/
Date                                                  Matthew J. Maddox
                                                      United States District Judge